UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

THOMAS BROWN,

    Plaintiff,

  v.

CITY OF CHICAGO and EDWARD SNARSKIS,

    Defendants.

No. 14 CV 1605

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Thomas Brown dialed 9-1-1 because his sister—referred to by her first name, Kathleen, to avoid confusion—needed medical attention. Paramedics, including defendant Edward Snarskis, arrived to assess and treat Kathleen. Brown screamed at them repeatedly, using foul and aggressive language, demanding that Kathleen be taken immediately to a hospital. Snarskis told Brown to calm down and leave the room; when he didn't, Brown says Snarskis physically attacked him. Brown sued Snarskis for an unconstitutional use of excessive force, and sued the City of Chicago for state-law battery. Brown also sought indemnification from the City for any judgment entered against Snarskis.

Defendants move for summary judgment, arguing that there was no constitutional violation because Snarskis did not act under color of state law. The City also argues that it has no indemnification duty because Snarskis acted outside the scope of his employment. For the reasons below, defendants' motions are denied.

I.      **Legal Standards**

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).[1]

---

[1] In arguing that Snarskis did not act under color of state law or within the scope of his employment, defendants view many genuinely disputed facts in the light most favorable to them, rather than to Brown, the non-movant. For example, defendants argue that the paramedics were not actually treating Kathleen, despite admissible evidence to the contrary (the paramedics' deposition testimony). [85] ¶¶ 2–6, 8, 12, 19. Defendants argue that this inverted approach to summary judgment is warranted because it accepts Brown's deposition testimony. [84] at 2; [85] (objections), [86] (replies). But Brown's deposition—which is not as clear as defendants suggest—does not compel summary judgment where admissible evidence demonstrates a genuine dispute of material fact. *See Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985) (when conflicting testimony is given "by two separate individuals, then summary judgment would be inappropriate because the district court may not weigh conflicting evidence."); *see also Central States, Se. & Sw. Areas Pension Fund v. Neiman*, 2000 U.S. Dist. LEXIS 5756, *14–18 (N.D. Ill. Mar. 24, 2000) (rejecting argument that non-movant "is not allowed to offer evidence that contradicts his [earlier sworn] representations"). Brown may rely on the paramedics' version of events (even if inconsistent with his own testimony) to defeat defendants' motions for summary judgment.

## II. Facts[2]

Brown dialed 9-1-1 because he believed that Kathleen was overdosing on alcohol and prescription medication, and that she needed to be taken to a hospital. DSOF ¶¶ 4, 12; PSOF ¶ 14. Chicago Fire Department paramedics Edward Snarskis and Heather Linehan responded to the call, entered Kathleen's house, and found Kathleen in a first-floor bedroom. DSOF ¶¶ 5–6. Shortly thereafter, Brown arrived, entered the house, and stood in the bedroom doorway. DSOF ¶¶ 7–8.

The paramedics brought their medical equipment, assessed Kathleen, inspected her pupils, and tried to determine the problem and an appropriate treatment. PSOF ¶¶ 2–6, 8, 11, 19. Brown, believing that Kathleen was overdosing, repeatedly yelled at the paramedics (using profanities), demanding that Kathleen be taken to a hospital. DSOF ¶ 12; PSOF ¶¶ 14–15; [82-1] at 40:7–9, 41:17–20, 42:20–23, 45:6–14, 45:24–46:1, 55:1–13; [82-2] at 24:1–5. Snarskis told Brown to calm down. PSOF ¶ 16. Brown continued yelling and moved toward Snarskis. [82-1] at 43:1–2, 44:19–20, 44:23–45:14. Snarskis felt "heightened"—he thought that Brown was "all fucked up on drugs" and was "a threat to everyone in the room." PSOF ¶¶ 17, 20; DSOF ¶ 18. Brown's antics interfered with the paramedics' ability to treat Kathleen. PSOF ¶ 23; [82-1] at 55:5–7; 76:14–24. Although police officers are usually called to the scene for potential overdose incidents, none were present during the relevant events. [82-1] at 51:10–52:4; [82-2] at 12:12–16.

---

[2] The facts are taken from the parties' Local Rule 56.1 statements and accompanying exhibits. "DSOF" refers to defendants' statements, with Brown's responses and defendants' replies [86]. "PSOF" refers to Brown's statements, with defendants' responses [85].

3

Snarskis took a step toward Brown and repeatedly told him to leave the room, saying: "get out of the room," "get the fuck out of the room," and "just get the fuck out of the room." PSOF ¶ 21; [82-1] at 46:6–13. Brown didn't. Instead, he continued to demand that Kathleen be taken to a hospital. PSOF ¶ 20. In response, Snarskis charged at Brown, punched him in the chest, grabbed him by the neck, and threw him into a wall. PSOF ¶ 22; DSOF ¶ 18.[3] Brown then left the house. DSOF ¶ 19.

With Brown gone, the room was a "safe environment" that allowed the paramedics to continue their evaluation. PSOF ¶¶ 24, 26; [82-1] at 56:10–12. They did so, and decided to take Kathleen to a hospital. PSOF ¶ 24. They put Kathleen on a chair, wheeled her out of the house, and helped her into the ambulance. PSOF ¶ 25; DSOF ¶ 22; [82-3] at 167:3–5.

## III. Analysis

The issues presented by defendants' motions are whether Snarskis acted (1) under color of state law, or (2) within the scope of his employment. Those issues are "closely related, although not identical." *Wilson v. City of Chicago*, 120 F.3d 681, 684 (7th Cir. 1997). Both issues depend on whether Snarskis's actions were related to his duties as a paramedic. *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010) (conduct is under color of state law if "it is related in some way to the performance of the duties of the state office"); *Coleman v. Smith*, 814 F.2d 1142, 1149 (7th Cir. 1987) (conduct is within the scope of employment if it is "incident to the service of

---

[3] Snarskis denies attacking Brown ([82-1] at 46:14–24) but defendants adopt Brown's version of this fact for summary judgment purposes (DSOF ¶ 18; [78] at 2 n.1; [79] at 2 n.1).

4

employment"). In this case, the close relation and the nature of the parties' arguments allow the issues to be resolved together (at least at the summary-judgment stage).

Defendants argue that Snarskis's actions could not have been related to his duties as a paramedic because neither he nor Linehan was actually performing any paramedic duties. [78] at 6–7; [79] at 6–7; [84] at 1–3. That argument relies on viewing genuinely disputed facts—namely, whether the paramedics were attending to Kathleen—in the light most favorable to the defendants, rather than the non-movant, Brown. A jury could accept the paramedics' testimony that they were attempting to treat Kathleen when Brown interfered, and therefore Snarskis was acting as a paramedic when he used force against Brown. This would likely require the jury to reject parts of Brown's testimony, while accepting others, but a jury is free to do so. *See Kraushaar v. Flanigan*, 45 F.3d 1040, 1053–54 (7th Cir. 1995). On the current record, there is a genuine dispute about whether the paramedics were rendering aid to Kathleen, and this precludes summary judgment.

Defendants next argue that Snarskis's actions could not have been related to his duties because, by using force against a non-patient, he exceeded his authority. [78] at 5–8; [79] at 5–8; [84] at 3–7, 10–11. But that argument misses the mark. In the ordinary (if not in *every*) meritorious excessive-force case, a state actor will have exceeded his authority—a State cannot authorize its agent to violate an individual's federal constitutional rights. So the Seventh Circuit has repeatedly said that whether an actor exceeds his authority is irrelevant to the "color of state law"

5

inquiry. *Yeksigian v. Nappi*, 900 F.2d 101, 104 (7th Cir. 1990) ("The fact that these city employees may have acted *in excess* of their authority is irrelevant to the color of law inquiry.") (original emphasis); *Lopez v. Vanderwater*, 620 F.2d 1229, 1236 (7th Cir. 1980) ("Action taken by a state official who is cloaked with official power and who purports to be acting under color of official right is state action and is taken under color of state law whether or not the action is in fact in excess of the authority actually delegated to the official under state law.").

The proper inquiry is not whether Snarskis's attack was "authorized," but whether it related in some way to his duties as a paramedic. *See Wilson v. Price*, 624 F.3d at 392; *Coleman v. Smith*, 814 F.2d at 1149. For example, in *Wilson v. City of Chicago*, the City argued that Chicago police officer Jon Burge acted outside the scope of his employment when he tortured criminal suspects to extract their confessions. 120 F.3d at 685. The Seventh Circuit found the argument to "border[] on the frivolous." *Id*. Burge "was not pursuing a frolic of his own"—to the contrary, by pursuing criminal suspects, he was doing his job, though "overzealously" and through "improper means." *Id*. He thus acted "squarely within the scope of his employment." *Id*. *See also Argento v. Melrose Park*, 838 F.2d 1483, 1495 (7th Cir. 1988) (employees act within the scope of their employment when they perform their duties, even using "quite improper methods"). Indeed, in *Coleman*, the Seventh Circuit noted that it had previously held (in a case applying similar Wisconsin law) that defendants "were acting within the scope of their authority even though their

6

conduct was extremely egregious and could be characterized only as malicious and done with evil intent to injure the plaintiff." *Coleman*, 814 F.2d at 1148–49.

Here, there is evidence that Snarskis's contact with Brown was in furtherance of his work as a paramedic. Linehan testified that calming down third parties, or getting away from them, is sometimes necessary in order for paramedics to continue their patient care. PSOF ¶ 27; [82-2] at 33:3–17. In this case, Brown's persistent and profane yelling interfered with the paramedics' work. PSOF ¶ 23; [82-1] at 55:5–7; 76:14–24. Snarskis thought Brown was a threat to everyone in the room, told him to calm down, and told him to leave the room. PSOF ¶¶ 16–17, 20–21; [82-1] at 46:6–13. There were no police officers on scene to control Brown. [82-1] at 51:10–52:4; [82-2] at 12:12–16. Only after the fight and after Brown left the room—thereby making it a safe environment—were the paramedics able to finish evaluating Kathleen and take her to the ambulance and then to a hospital. PSOF ¶¶ 24–26; DSOF ¶ 22; [82-1] at 56:10–12; [82-3] at 167:3–5. A reasonable jury could conclude that Snarskis's actions were related to his work as a paramedic.

The closest analogous case that any party has presented, or that the court's own research has turned up, is *Travis v. Keiper-Knapp*, 2011 U.S. Dist. LEXIS 128851 (N.D. Ill. Nov. 8, 2011). In *Travis*, paramedics were called to assist the plaintiff, but the plaintiff did not want their help. The paramedics forcibly picked the plaintiff up, threw him into a chair, pushed him into the ambulance, choked him, put him in a headlock, rammed his head into the wall of the ambulance twenty times, twisted and threatened to break his arm, taped him to a stretcher, and beat

7

him in the face and stomach. *Id.* at *2–5. The paramedics moved for summary judgment, arguing that their actions were not under color of state law. The district court denied the motion because "the improper force that the paramedics allegedly used against Travis was unquestionably 'related' to their official duties; indeed, the force was used, in part, to control Travis so that the paramedics could complete their duties." *Id.* at 10–11. Similarly here, as already stated, a reasonable jury could find that Snarskis used force—albeit on a third party—"so that the paramedics could complete their duties."

Defendants' analogy to *Wilson v. Price* is unpersuasive. In *Wilson*, an alderman received several complaints about cars parked illegally in front of a car-repair shop. The alderman went to the shop and confronted its employee, who refused to move the cars. In response, the alderman "savagely beat the employee until he was unconscious." 624 F.3d at 391. The Seventh Circuit noted that the alderman served a "purely legislative" function, but also stated that he was entitled to "perform the secondary activities necessary for the fulfillment of that function." *Id.* at 392. Thus, he would have been acting within his role had he merely gone to the shop "for the purpose of investigation (i.e., getting the vehicle tag numbers, inquiring about why the cars [were] parked there)." *Id.* at 392–93. But his savage beating "crossed the line" so that he no longer acted "in a capacity legitimately related to his role as legislator," and thus he did not act under color of state law. *Id.* at 392–93.

8

*Wilson* does not preclude recovery in this case. As *Wilson* made clear, the standard is merely whether the state agent's actions were "related in some way" to his job. *Id.* at 392; *see also id.* (acting under color of state law includes "secondary activities necessary for the fulfillment of [the actor's] function"); *id.* at 393 (noting that "Price's conduct was not *connected* to his legislative duties *or related activities*") (emphasis added). The Seventh Circuit held that Price did not act under color of state law because he served a "purely legislative" role, but his actions were not "legislative *or otherwise necessary for legislation.*" *Id.* at 392, 393 (emphasis added). In short, nothing about the physical contact with the shop employee concerned Price's ability to perform his legislative duties. In contrast, in the present case, there are material disputes of fact as to whether Brown interfered with Snarskis's ability to perform his paramedic duties toward Kathleen and whether Snarskis's actions were aimed at eliminating that interference. To be sure, a reasonable jury could find that Snarskis *did not* act under color of state law or within the scope of his employment—but the jury would not be compelled to do so. Accordingly, defendants' motions are denied.

## IV. Conclusion

For the foregoing reasons, defendants' motions for summary judgment [78] and [79] are denied.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: 6/8/15